# IN THE COURT OF APPEALS OF IOWA

No. 17-1328
Filed November 8, 2017

IN THE INTEREST OF T.H. Jr., A.R., A.C., and A.K.,
Minor Child,

R.K., Father,
　　　　Appellant,

T.H., Father,
　　　　Appellant

K.K., Mother,
　　　　Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother and two fathers appeal the termination of their parental rights.

**AFFIRMED.**

Shane P. O'Toole, Des Moines, for appellant-father R.K.

Jennie L. Wilson-Moore of Wilson Law Firm, for appellant-father T.H.

Andrew Tullar of Tullar Law Firm, P.L.C., Des Moines, for appellant-mother.

Meegan M. Langmaid-Keller of Keller Law Office P.C., Altoona, attorney and guardian ad litem for minor children.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

K.K., the mother of four children—A.C., born 2005; A.R., born 2010; T.H. Jr., born 2014; and A.K., born 2015—appeals the termination of her parental rights. Two of the four fathers also appeal: T.H. appeals the termination of his rights to T.H. Jr., and R.K. appeals the termination of his rights to A.K.[1]

The children were initially removed from the home in December 2015, after the Iowa Department of Human Services (DHS) was informed A.R., then four years of age, had set herself on fire, resulting in burns over twenty-one percent of her body. In addition, A.R. tested positive for methamphetamine. At the time, the mother was living with T.H., who was known to be abusive and an active drug user, which posed a threat to all the children. The children were returned to the mother a few months later but removed again on June 2, 2016, on allegations that inappropriate people were living in the home with access to the children, and that the mother was selling marijuana. The mother then tested positive for methamphetamine. On September 1, the mother was arrested on drug and weapons-related charges and remained in jail until December 8.

Following the mother's failure to follow through with the extensive reunification services offered to her, the State filed a petition to terminate her parental rights as well as the fathers' rights to their respective children. The matter came on for hearing on June 30 and July 21, 2017, after which the mother's parental rights were terminated under Iowa Code section 232.116(1)(f) (2017) as to A.C. and A.R., (h) as to T.H. Jr. and A.K., and (e) as to all four

---

[1] The parental rights of the father of A.C. and the father of A.R. were also terminated. A.C.'s father does not appeal; A.R.'s father is deceased.

children.[2]   T.H.'s and R.K.'s parental rights were both terminated under Iowa Code section 232.116(1)(e) and (h).  The mother and the two fathers appeal.

**Standard of Review.**

We review termination of parental rights proceedings de novo, giving deference to the district court's findings but not being bound by them.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

**The Fathers' Appeals.**

Both fathers, T.H. and R.K., request we reverse the findings of the district court under section 232.116(1)(e).  As neither contests the findings made under (h), we affirm the termination of both father's parental rights under that subsection.  *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").  Even if we were to address the terminations under the preserved issue of section 232.116(1)(e), we would affirm as the record fully supports the conclusion that neither father maintained "significant and meaningful contact"

---

[2] Paragraph (e) provides termination is warranted if:
> The court finds that all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.  For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent.  This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

over the course of their respective child's life. R.K. also asserts he should be given an additional six months to work towards reunification; however, the district court found:

> [R.K.] was minimally involved in [A.K.'s] life before he went to prison but not involved at all while he was in prison. [R.K.'s] only efforts to be a father to [A.K.] consist of one request for a visit with [A.K.], and that request did not occur until June 23, 2017; only one week before the termination hearing, but one month after he was served with the Termination Petition and 15 months after he was served with the CINA Petition. [R.K.'s] disinterest in [A.K.'s] life is obvious. He has never provided support for [A.K.], never cared for [A.K.], and still has no parent-child bond with him. . . . The Court cannot imagine any circumstances where the need for removal will no longer exist at the end of an additional six-month period.

The record fully supports these observations and findings of the district court. *See* Iowa Code § 232.104(2)(b) (providing a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").

**The Mother's Appeal.**

The mother contests the findings of the district court that supported termination under Iowa Code section 232.116(1)(e), (f), and (h), as well as asserting the DHS failed to provide her with reasonable efforts towards reunification and termination is not in the children's best interests.

Visitation with the children remained supervised during the entirety of these proceedings. The mother's claim that she was not offered additional visitation rings hollow as the record supports the mother was not compliant with the expectations for safe visits with the children. We agree with the district court's findings:

The DHS made reasonable efforts to increase the mother's time with the children but the mother chose not to follow the rules that were in place. The Court declines to find that the DHS failed to make reasonable efforts toward reunification.

The mother has struggled for many years with issues, inhibiting her ability to safely parent her children.[3] In August 2016, during the pendency of these CINA proceedings, the mother was arrested when she was a passenger in a vehicle containing a large quantity of methamphetamine. After four months in jail, the mother pled guilty to a weapons charge and was sentenced to 120 days in jail, with credit for time served. The mother has been offered substance abuse treatment but has failed to adequately comply with the services offered, including periodic drug screening. Her drug involvement has subjected her children to harm, which has been a barrier for the safe return of the children to her care. As the DHS worker testified, concerning the mother's substance abuse issues:

> [The mother] doesn't use drugs as much as she has a history of selling drugs, and services were recommended for her to complete substance abuse treatment, still outpatient, to address those kinds of concerns. The provider had also mentioned concerns of [the mother's] decision making with—often she becomes involved with males, or boyfriends and such, that get her into trouble and cause neglect or harm due to substance abuse issues with the children. So those things were all things that she was working with in treatment.
>     Q. And as far as the treatment, has that been successfully completed? A. No.

As to the grounds for termination under section 232.116(1)(f)[4] regarding A.C. and A.R., the district court found:

---

[3] The mother has seven children, but only the four youngest are the subject of the current proceedings. From 2003 through 2016, there have been seven founded child abuse assessments against the mother, primarily involving her drug use and drug selling.
[4] Paragraph (f) provides termination is warranted if:

Given the mother's continued lack of progress; refusal to consistently participate with recommended mental health services, substance abuse services, and drug screens; refusal to consistently attend the children's medical and mental health appointments; failure to progress beyond supervised visits; and failure to establish any semblance of stability during the two years this case was open; as well as the children's detachment from her, the children cannot be returned to her custody at the present time or in the immediate future.

As to T.H. and A.K., the court found under section 232.116(1)(h):[5]

Given the mother's failure to progress beyond supervised visits; her failure to provide any requested random drug screens; her failure to complete or even consistently attend her mental health sessions, substance abuse sessions, and her children's medical appointments; and her failure to establish any semblance of stability during the two years this case was open, neither [T.H. Jr.] nor [A.K.] can be returned to her custody at the present time or in the immediate future.

The record fully supports these findings.

---

The court finds that all of the following have occurred:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
[5] Paragraph (h) provides termination is warranted if:
The court finds that all of the following have occurred:
    (1) The child is three years of age or younger.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Finally, the mother asserts termination is not in the children's best interests as she was "making progress." However, the district court found:

> The mother's ability to care for her children is obviously affected by her lifestyle of instability, poor choices, and failure to follow through. She has seven "founded" abuse reports and been involved with the juvenile court now for the fourth time. She knows what is expected of her, yet she continues to put forth only a minimal effort. She continues to use drugs as evidenced by her "positive" drug screen in the middle of this case. She continues to associate with the drug culture, as evidenced by her relationship with [R.K.] (allowing [R.K.] to be around [A.K.] and exposing her to methamphetamine), her relationship with [T.H.] (allowing [T.H.] to be around the children while he was actively using drugs, resulting in removal of the children), and her recent arrest in a car full of methamphetamine. She refuses to submit to random drug screens. She refuses to consistently engage in mental health and substance abuse treatment unless or until reminded or prodded to do so. And she refuses to consistently attend her children's appointments and sessions unless or until repeatedly reminded or asked to do so. Her children have not been a priority for her and they are now growing distant from her. After almost two years of involvement with the DHS in this case, now her fourth, [the DHS worker] testified that "nothing has changed to move her forward." She has not been able to care for the children for over the past thirteen months and will not be able to do so in the near future. Her problems, as recited above, have prevented her from providing for the children's safety, long-term nurturing and growth, and physical, mental and emotional needs, and will continue to prevent her from doing so for the foreseeable future.

In making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother's claim of recent progress is overshadowed by the present needs of these children for stability. Further, in determining the future actions of this mother, her past conduct is instructive. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). We agree the best

interests of the children are served by the termination of the mother's parental rights.

**AFFIRMED.**